# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **WILLIAM A. ENRIQUEZ,** <br><br> Plaintiff, <br><br> v. <br><br> **STEPHEN L. JOHNSON,** <br> **Administrator, ENVIRONMENTAL** <br> **PROTECTION AGENCY,** <br><br> Defendant. | **Case No. 07 C 4589** <br><br> **Hon. Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Enriquez (hereinafter, "Plaintiff") has filed a five-count complaint against his former employer, the Environmental Protection Agency (the "EPA"), alleging that he was discriminated against on the basis of his sex, age, race, national origin, and prior equal employment opportunity ("EEO") complaints. The EPA now moves for summary judgment against Plaintiff on all counts. For the reasons stated below, the Motion for Summary Judgment is **granted**.

## I. FACTS

Plaintiff is a male of Cuban descent born in 1962. He was employed with the EPA for approximately thirteen years, working as an environmental protection specialist from 1990 to 1992, as an ecologist from 1992 to 2000, as a business administrator for part of 2000, and again as an ecologist from 2001 to 2003. He resigned

from the EPA in March of 2003, claiming that the EPA was trying to destroy his career and his life, and that he was forced to leave the agency for the sake of his health and the sake of his family.

According to Plaintiff's Complaint and his deposition testimony, numerous managers and supervisors at the EPA conspired to suppress his career, beginning with a 1999 reorganization in which two other GS-12 ecologists were promoted to GS-13 but Enriquez was not. Despite official paperwork which transferred Enriquez to the Corrective Action Section (the "CAS"), Enriquez was told to report to the Technical Support/Permitting Section (the "TSPS") of the EPA, and from 1999 to 2002 he was given increasingly more permit work and allowed less ecological work. After Enriquez complained about the amount of permit work and notified his supervisors that he was technically assigned to CAS, they officially transferred Plaintiff to TSPS and added a new permit-related element to his performance criteria. The ecological assignments that Enriquez did receive were subjected to a new review process, which Plaintiff claims applied only to him and was put in place solely to find fault with his work.

When a new GS-13 ecologist position opened in February 2002, Enriquez claims he applied and received a notice of qualification from the human resources department, but no one was interviewed and the position announcement was closed. When the position was later reopened, Enriquez was interviewed, but the EPA selected Barbara

Mazur, a white woman Enriquez believed to be approximately 35 years old. Shortly thereafter, Enriquez received what he believes was a false and biased annual review for 2002. The shortcomings identified in that review led to Enriquez's placement on a Performance Assistance Plan ("PAP") - a probationary-type measure that is the first in a series of steps toward termination. Enriquez also complains that his December 2002 request for hours from the voluntary leave bank (the "VLB") was unfairly denied and submitted for a second medical review not required of other applicants. He further contends that his March 2003 request for 25 days of leave without pay to prepare for divorce and custody proceedings was subjected to unfair and intrusive requests for documentation which other employees did not have to provide.

The EPA concedes that most of Enriquez's supervisors and the other relevant actors knew of his age, race, gender, national origin, and prior EEO complaints, but argues that Enriquez has failed to make out a *prima facie* case of discrimination. Enriquez, in turn, concedes that he never heard his supervisors discuss any of these protected characteristics in relation to the actions of which he complains. He further admits that he was not privy to the performance reviews of his co-workers or the basis on which some of them were promoted. In addition to his own deposition and affidavit, Enriquez supports his claims of discrimination with numerous exhibits documenting his transfer to TSPS, his grievances

and EEO complaints, his removal from ecological projects, his successful 2001 evaluation, and the denial of his VLB request. Enriquez also submits several contemporaneous letters he wrote describing or responding to some of the actions of which he complains, and he attaches the affidavit of union steward Jeff Bratko ("Bratko"), stating Bratko's opinion that the leave bank processes were unfair and that the denial of Plaintiff's VLB request was "very surprising and unusual."

## II. **ANALYSIS**

In making the summary judgment determination, the Court must view the evidence in the light most favorable to the nonmoving party and resolve all factual disputes in its favor. *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir., 2005). However, the opposing party cannot simply rest on allegations and denials contained in its pleadings, but must identify specific facts demonstrating a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e)(2); *Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir., 1996). Affidavits submitted in opposition to a motion for summary judgment must be made on personal knowledge, set out admissible facts, and show the affiant's competency to testify on the matters stated. *See* Fed. R. Civ. P. 56(e)(1); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir., 1999) (statements which are outside affiant's personal knowledge, which are the result of speculation or conjecture, or which are

merely conclusory do not meet this requirement). Where the plaintiff fails to produce proper evidence sufficient to establish an essential element of his case, that failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A plaintiff alleging Title VII discrimination can prove his claim using either the direct or indirect method of proof. *See Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir., 2003). Under the direct method, Plaintiff must show an acknowledgment of discriminatory intent by the defendant or a convincing mosaic of circumstantial evidence supporting an inference of intentional discrimination. *See Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir., 2007). *See also, Mendoza v. Chicago Park Dist.*, 2002 WL 31155078, at *7 (N.D. Ill., Sept. 26, 2002) ("Direct evidence of discrimination is 'smoking gun' evidence"). Under the indirect, burden-shifting method, the plaintiff must show the following to establish a *prima facie* case: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) the employer took an adverse employment action against him; and (4) his employer treated similarly situated individuals outside the protected class more favorably. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir., 2004). Failure to demonstrate any one of the required *prima facie* elements defeats the

Plaintiff's discrimination claims. *See Bio v. Federal Express Corp.*, 424 F.3d 593, 596 (7th Cir., 2005).

Here, Plaintiff's failure to identify similarly situated individuals forecloses him from setting forth a *prima facie* case under the indirect method. As to four of the eight adverse actions identified by Plaintiff (his claim of a biased annual review, his placement on a performance assistance plan, the dismissal of the GS-13 position announcement, and the denial of his leave bank application), Plaintiff's brief and his statement of facts are completely silent as to which similarly situated individuals received better treatment. Although Enriquez asserts that "no one else" was subjected to the same leave bank procedures or gathering of co-worker input for their annual review, that declaration is insufficiently specific to fulfill Plaintiff's burden. *Cf. Graham v. AT&T Mobility, LLC*, 247 Fed.Appx. 26, 30 (7th Cir., 2007) (statement that "similarly situated employees" were not required to communicate with supervisors throughout the day was insufficient); *Czerska v. United Airlines, Inc.*, 292 F.Supp.2d 1102, 1117 (N.D.Ill., 2003) (blanket comparison to everyone else in the department insufficient). Nor can Plaintiff prove that the other employees were similarly situated simply by showing they were all subject to the same disciplinary and benefit guidelines. *See Randall v. Unitech Systems, Inc.*, 243 F.Supp.2d 822, 829-30 (N.D.Ill., 2003).

Plaintiff must do more to fulfill his burden of identifying similarly situated individuals. He must first identify specific individual employees, and then set about the detail-oriented task of demonstrating that those employees are "directly comparable to [him] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir., 2002). Enriquez must show such things as similar experience, similar education, similar ability, similar performance, similar duties, similar job titles, and similar supervisors. *See, e.g., id.; Roney v. Illinois Dept. of Transp.*, 376 F.Supp.2d 857, 873-74 (N.D.Ill., 2005).

Although Plaintiff does succeed in specifically identifying better-treated individuals in support of his other claims, he still fails to demonstrate that those employees were similarly situated to him. While Enriquez clearly identifies Barbara Mazur as the individual who received the new GS-13 position instead of him, he fails to provide any evidence of Ms. Mazur's prior experience, ability level, or other qualifications for the job, much less describe how his own ability and prior performance made them similarly situated. *Cf. Roney*, 376 F.Supp.2d at 873-74. The same is true of the promotion of Daniel Mazur and Chuck Maurice during the August 1999 reorganization. Plaintiff admits that he does not know the basis on which the others were promoted, he was not privy to their performance reviews, and he was uncertain whether they had previously shared a common supervisor. *Cf. Randall*, 243 F.Supp.2d

at 829 (employees not similarly situated where they have different supervisors). Of course, neither Enriquez's conclusory assertion that he *thought* his ability and knowledge were superior to Mazur and Maurice, nor his speculation as to the reasons for his non-promotion are sufficient to save his *prima facie* case. *See Nwangwa v. Federal Express Corp.*, 59 Fed.Appx. 814, 817 (7th Cir., 2003) (plaintiff's mere opinion about the age and disciplinary record of other employees insufficient; must present record evidence); *Rothman v. Emory University*, 123 F.3d 446, 453 (7th Cir., 1997) (plaintiff cannot rest his claims primarily on his own perceptions of defendant's motivations).

As to his remaining claims, Plaintiff's deposition testimony affirmatively demonstrates that the individuals identified were in a materially different situation from Enriquez. Although Plaintiff claims he was the only one required to provide documentation for a leave without pay request of less than 30 days, the only individual he identifies, Meagan Smith, requested leave without pay of over 30 days (a materially different situation under the regulations to which Plaintiff points). But even ignoring that distinction, Enriquez is unsure whether she was, or was not, required to substantiate her request with corroborating documentation. As to his complaints about the improper work assignments he received, Enriquez's testimony again discloses differentiating factors between himself and those he identifies. Daniel Mazur was an

ecologist of a higher rank (GS-13) than Enriquez, and Czajkowski and Rodeen were employed as environmental protection specialists, not ecologists.  *Cf. Randall*, 243 F.Supp.2d at 829 (employees not similarly situated where they held different positions with different responsibilities); *Patterson*, 281 F.3d at 680 (plaintiff not similarly situated to employee to whom plaintiff was subordinate).

To the extent there are further actions of which Enriquez complains, or further individuals to which he would compare himself, his claims are either conclusory or unclear, and they must be denied.  *See Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 615 (7th Cir., 2001) (plaintiff must offer specific evidence and not just conclusory assertion that other employees are similarly situated).  The Court need not scour the record in search of further potential claims.  *See Albrechtsen v. Board of Regents of the University of Wisconsin System*, 309 F.3d 433, 436 (7th Cir., 2002).  *See also, Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir., 2000) (Plaintiff bears the burden of demonstrating that other employees were similar in all material respects).

Given Plaintiff's failure to make out a *prima facie* case under the indirect method, the Court turns to the direct method, and charitably construes Plaintiff's statement that "things just do not add up" as an attempt to demonstrate a convincing mosaic of circumstantial evidence.  Most pertinently, Plaintiff could point

to: (a) the uniquely rigorous review of his leave bank and leave without pay applications; (b) the discussion that his supervisors planned to "hit him with performance issues"; (c) his official transfer into TSPS and the comment that he was "screwed now"; (d) Croke's denial of his leave bank application and her statement that "if it's discretionary, I'll deny it"; and (e) the release of a negative follow-up to Enriquez's successful annual review near in time to the posting of the new GS-13 ecologist position.

Plaintiff clearly admits, however, that none of the above statements or actions were accompanied by a statement about or identification of Enriquez's race, national origin, age, gender, or prior EEO activity. Plaintiff presents no evidence that any of the Defendants referred to Enriquez's protected characteristics in a disparaging manner, or indeed, referred to those characteristics at all. While Enriquez's overall employment history may disclose unfair or uncompassionate treatment by his superiors, Enriquez must provide at least some evidence that ties that treatment to Enriquez's protected characteristics. *See Roney*, 376 F.Supp.2d at 875 ("The circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action and be directly related to the employment decision.") (internal citations omitted). A federal court can only protect Plaintiff from adverse actions based on prohibited criteria; it cannot provide redress for employer actions which are simply incorrect or unwise. *See Place*

*v. Abbott Laboratories*, 215 F.3d 803, 811 (7th Cir., 2000). Without some evidence permitting an inference that the EPA's actions were taken on the basis of Enriquez's sex, age, race, national origin, or prior EEO activity, this Court cannot allow Plaintiff's case to survive summary judgment.

### III. CONCLUSION

For the reasons stated herein, Plaintiff has failed to provide either direct or indirect evidence of discrimination by the EPA. Defendant's Motion for Summary Judgment is therefore **granted**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 10/22/2008